# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THELMA AYCOCK, as personal representative
of the ESTATE OF RICHARD AYCOCK,

       Plaintiff,

v.                                                    CASE NO. 3:09-cv-10928-J-37JBT

R.J. REYNOLDS TOBACCO CO.,

       Defendant.

---

## COURT'S FINAL INSTRUCTIONS TO THE JURY

**INSTRUCTION NO. 1.**

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case. When I have finished, you will go to the jury room and begin your discussions – what we call your deliberations.

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employee that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence–that is, the testimony of the witnesses and the exhibits I have admitted in the record–but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law

makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

## INSTRUCTION NO. 2.

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision, you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?

## INSTRUCTION NO. 3.

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## INSTRUCTION NO. 4.

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

## INSTRUCTION NO. 5.

In this case it is the responsibility of the Plaintiff, Thelma Aycock (who I will sometimes refer to as "Mrs. Aycock"), to prove every essential part of the her claims by a "preponderance of the evidence" (except for her punitive damages claim, which has a different standard of proof that I will discuss later). This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Mrs. Aycock's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Mrs. Aycock's claim against the Defendant, R.J. Reynolds Tobacco Company (who I will sometimes refer to as "Reynolds"), by a preponderance of the evidence, you should find for Reynolds as to that claim.

## INSTRUCTION NO. 6.

In this case, Mrs. Aycock makes four different claims of wrongful conduct by the Reynolds—claims known as torts that, if proved by Mrs. Aycock, are recognized by the law as causes of action justifying recovery by the injured party of money damages that are proved to have been legally caused by the wrongful conduct.

These claims are:  (1) negligence; (2) strict liability; (3) fraudulent concealment; and (4) conspiracy to fraudulently conceal.  Mrs. Aycock seeks to recover both compensatory and punitive damages, as I will explain later.

## INSTRUCTION NO. 7.

A preliminary issue with respect to all of Mrs. Aycock's claims is her contention that Richard Aycock was a member of the Engle Class.  You will remember from my instructions at the beginning of this case that this case arises from an earlier class action lawsuit known as the Engle case.  A "class action" is a lawsuit brought on behalf of a group of people claiming damages from the same alleged wrongful conduct by a defendant.  In 2006, the courts determined that the Engle case, for legal reasons, should not proceed further as a group or class action.  Instead, those persons (or representatives of deceased persons) claiming to be members of the former Engle class could file individual lawsuits, and those plaintiffs who proved that they qualify as members of the former class, as defined in the Engle case, would be entitled to the benefit of certain factual findings that had already been established in that case before it was dissolved and terminated as a class action.

In order to be a member of the Engle class, Mrs. Aycock must prove by a preponderance of the evidence that Richard Aycock was addicted to cigarettes containing nicotine and that cigarette smoking because of such addiction was a legal cause of his death. Reynolds, however, maintains that Mrs. Aycock has not met her burden of proving that Richard Aycock was a member of the Engle class because she has not proved that Mr. Aycock died of lung cancer caused by cigarette smoking, that he was addicted to cigarettes containing nicotine, or that such addiction was a legal cause of his lung cancer.  Rather, the Reynolds asserts that Richard Aycock was not addicted to cigarettes containing nicotine and that he chose to smoke and continued to smoke long after he was aware or should have been

9

aware of the health risks associated with smoking.  Reynolds therefore denies that Mrs. Aycock is entitled to recover any damages from Reynolds.

In order to prove that addiction to smoking cigarettes containing nicotine was a "legal cause" of Richard Aycock's death, Mrs. Aycock must prove that such addiction directly and in natural and continuous sequence produced or contributed substantially to producing such death, so it can reasonably be said that, but for the addiction, the death would not have occurred.  In order to be regarded as a legal cause of death, addiction need not be the only cause.  Addiction may be a legal cause of death even though it operates in combination with the act of another, some natural cause, or some other cause, if the addiction contributes substantially to producing such death.

So, the first issue for your unanimous determination in this phase of the trial is whether Richard Aycock was a member of the Engle class.  You will be asked the following questions on the verdict form:

1.    Was lung cancer caused by cigarette smoking a legal cause of Richard Aycock's death?

YES _____            NO _____

If you answer "Yes" to Question 1, according to your unanimous determination, you will then answer Question 2:

2.    Was Richard Aycock addicted to cigarettes containing nicotine?

YES _____            NO _____

10

If you answer "Yes" to Question 2, according to your unanimous determination, you

will then answer Question 3:

3.    Was Richard Aycock's addiction to cigarettes containing nicotine a legal cause

of his death?

YES _____              NO _____

# INSTRUCTION NO. 8.

If you answer "Yes" to Questions 1, 2, and 3, you will have found that Richard

Aycock was an <u>Engle</u> class member, and you must apply certain findings made by the <u>Engle</u>

court and they must carry the same weight they would have if you had determined them

yourselves.  These findings are:

1. That smoking cigarettes causes lung cancer and other diseases.

2. That the nicotine in cigarettes is addictive.

3. That the <u>Engle</u> Defendants, including Reynolds, referred to here as the <u>Engle</u>
   Defendants, placed cigarettes on the market that were defective and
   unreasonably dangerous.

4. That the <u>Engle</u> Defendants concealed or omitted material information, not
   otherwise known or available, knowing that the material was false or
   misleading, or failed to disclose a material fact concerning the health effects
   or addictive nature of smoking cigarettes, or both.

5. That the <u>Engle</u> Defendants agreed to conceal or omit information regarding the
   health effects of cigarettes or their addictive nature with the intention that
   smokers in the public would rely on this information to their detriment.

6. That all of the <u>Engle</u> Defendants were negligent.

Your consideration and use of the <u>Engle</u> findings will be subject to certain limitations.

First, the <u>Engle</u> lawsuit did not determine, and the findings in that case do not mean,

that Reynolds is liable to anyone, including Mrs. Aycock in this case.  The question of

12

whether or not Reynolds is liable for Richard Aycock's death remains an issue for you to decide based on the evidence presented by the parties in this case and my instructions to you on the law.

Second, the <u>Engle</u> findings establish only what they expressly state and you must not speculate about the basis for the findings.

If you answer "Yes" to Questions 1, 2, and 3 (dealing with Mr. Aycock's membership in the <u>Engle</u> class), you will then be asked a series of questions dealing with Mrs. Aycock's tort claims of negligence, strict liability, fraudulent concealment and conspiracy to commit fraudulent concealment.

## INSTRUCTION NO. 9.

R.J. Reynolds Tobacco Company is legally responsible for the conduct of both the

American Tobacco Company and Brown & Williamson Tobacco Corporation.

## INSTRUCTION NO. 10.

With respect to each of the claims, you will be asked to decide whether Mrs. Aycock has proved by a preponderance of the evidence that the alleged act, omission, condition, or event which is the subject of each claim was a "legal cause" of Richard Aycock's death.

An act, omission, condition, or event is the "legal cause" of someone's death (including the "legal cause" of damages resulting from someone's death) if it directly and in natural and continuous sequence produces or contributes substantially to producing such death, so it can reasonably be said that, but for such act, omission, condition, or event, the death would not have occurred. In order to be regarded as a legal cause of death, an act, omission, condition, or event need not be the only cause. An act, omission, condition, or event may be a legal cause of death even though it operates in combination with the act of another, some natural cause, or some other cause if the act, omission, condition, or event contributes substantially to producing such injury or damage.

## INSTRUCTION NO. 11.

Mrs. Aycock's first claim is for negligence.  One of the <u>Engle</u> findings was that Reynolds was negligent with respect to its manufacture and sale of cigarettes and you must accept that determination.

Mrs. Aycock's second claim is for strict liability.  One of the <u>Engle</u> findings was that Reynolds placed cigarettes on the market that were defective and unreasonably dangerous and you must accept that determination.

The issue for your decision on both Mrs. Aycock's negligence and strict liability claims is whether smoking cigarettes manufactured by Reynolds was a legal cause of Richard Aycock's death.

So Question 4 on your verdict form is:

4.    Was smoking cigarettes manufactured by Reynolds a legal cause of Richard Aycock's death?

YES _____            NO _____

## INSTRUCTION NO. 12.

Mrs. Aycock's third claim is for fraudulent concealment.  Another one of the <u>Engle</u> findings was that Reynolds concealed or omitted material information, not otherwise known or available, knowing the material was false or misleading, or failed to disclose a material fact concerning the health effects and/or addictive nature of smoking cigarettes.  You must accept that determination.  The issue for your decision on this claim is whether Richard Aycock relied to his detriment on the concealment or omission of material information concerning the health effects or addictive nature of smoking cigarettes, and if so, whether such reliance was a legal cause of his death.

A material fact is one that is of such importance that Richard Aycock would not have acted as he did but for Reynolds's concealment or omission.  Mr. Aycock could have relied upon the truth of the representation even though its falsity could have been discovered had he made an investigation, unless he knew the representation to be false or its falsity was obvious to him.

In determining whether Richard Aycock relied to his detriment on a statement by Reynolds that omitted material information, you may not consider evidence of alleged statements, concealment, or other conduct that occurred before May 5, 1982.

So, Question 5 on your verdict form is:

5.     Did Richard Aycock rely to his detriment on Reynold's concealment or omission of material information after May 5, 1982 concerning the health effects or addictive nature of smoking cigarettes?

17

YES _____          NO _____

If you answered "Yes" to Question 5, according to your unanimous determination, you will then consider whether Mr. Aycock's reliance was a legal cause of his death.  So Question 6 on your verdict form is:

6.    Was the reliance a legal cause of Richard Aycock's death?

YES _____          NO _____

# INSTRUCTION NO. 13.

Mrs. Aycock's fourth claim is for conspiracy to commit fraudulent concealment. An agreement between two or more entities to do an unlawful act, such as concealing or omitting material information, is a conspiracy. Each party to a conspiracy is responsible for the acts or omissions of any other party to the conspiracy so long as the acts or omissions were in furtherance of the conspiracy, and that responsibility continues throughout the existence of the conspiracy.

Another Engle finding was that the Defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment, and you must accept that determination. The issue for your decision on this claim is whether Richard Aycock relied to his detriment on an act taken in furtherance of the Defendants' agreement to conceal or omit information regarding the health effects or addictive nature of cigarettes, and if so, whether such reliance was a legal cause of Richard Aycock's death.

In determining whether Richard Aycock relied to his detriment on a statement by Reynolds that omitted material information, you may not consider evidence of alleged statements, concealment, or other conduct that occurred before May 5, 1982.

So Question 7 on your verdict form is:

7.    Did Richard Aycock rely to his detriment on an act taken on or after May 5, 1982 in furtherance of Reynolds's agreement to conceal or omit material information concerning the health effects or addictive nature of cigarettes?

19

YES _____            NO _____

If you answered "Yes" to Question 7, according to your unanimous determination, you will then consider whether Mr. Aycock's reliance was a legal cause of his death. So Question 8 on your verdict form is:

8.    Was the reliance a legal cause of Richard Aycock's death?

YES _____            NO _____

## INSTRUCTION NO. 14.

If your verdict is for Mrs. Aycock on one or more claims against Reynolds, you must then consider the extent to which Richard Aycock's conduct was a legal cause of his death. Mrs. Aycock has admitted that Richard Aycock's conduct was a partial legal cause of his death. However, it is Reynolds's burden to prove the degree to which Richard Aycock is at fault.

Allocating a percentage of responsibility to Richard Aycock will not prevent recovery by Mrs. Aycock; it will only reduce the amount of Mrs. Aycock's recovery. In other words, if you find that Richard Aycock was, for example, 50% responsible for his own death, you would fill in that percentage as your finding on the verdict form. Such a finding would not prevent Mrs. Aycock from recovering; the Court will prepare the judgment to be entered and will reduce Mrs. Aycock's total damages as required by law. Of course, by using the number 50% as an example, I do not mean to suggest to you any specific figure at all. You might find 1% or 99%.

After deciding the degree of responsibility to be allocated to Richard Aycock, stated in terms of a percentage, you will then decide, based upon a preponderance of the evidence, the degree of responsibility to be assigned to Reynolds.

So Question 9 on your verdict form is:

21

9.      What percentage of responsibility that was a legal cause of Richard Aycock's

death do you allocate to the parties?

Richard Aycock            _____ %

Reynolds                  _____ %

**Total must be 100%**

## INSTRUCTION NO. 15.

If your verdict is for Reynolds on all claims, you will not consider the matter of damages. But if a preponderance of the evidence supports any of Mrs. Aycock's claims, you will then consider the total damages, in dollars, which a preponderance of the evidence shows to have been sustained by Mrs. Aycock as a result of Mr. Aycock's death.

You should consider the following elements of damage and no other:

Thelma Aycock's loss of support and services, loss of companionship and protection, and her mental pain and suffering, as a result of her husband's illness and death.

In considering the issue of damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all damages, no more and no less.

Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Reynolds. Also compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

On the other hand, compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury—tangible and intangible. Thus, no evidence of the value of such intangible things as pain and suffering or loss of companionship has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate Mrs. Aycock for her damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

In determining the duration of the damages sustained by Mrs. Aycock based on Mr. Aycock's death, you may consider the joint life expectancy of Mrs. Aycock and Mr. Aycock. In determining how long Mr. Aycock would have lived, if he had lived out a normal life, you may consider his normal life expectancy at the time of his death. The mortality tables received in evidence may be considered in determining how long he may have been expected to live. Such tables are not binding on you, but may be considered together with other evidence in the case bearing on Mr. Aycock's health, age, and physical condition before his death in determining the probable length of his life.

So Question 10 on the verdict form will ask you to specify, in dollars and cents, the total amount, if any, that you find from a preponderance of the evidence, to be the damages recoverable by Mrs. Aycock for the elements of damages as I just described them.

You should not make any reductions or allocations based upon the percentages of fault you have attributed to the parties. The Court will make and apply those calculations in entering a judgment upon your verdict as required by law.

## INSTRUCTION NO. 16.

Now, there is an additional claim in this case that you must decide.  If you find for

Mrs. Aycock and against Reynolds on her fraudulent concealment claim or her conspiracy

to fraudulently conceal claim, you must then decide whether in addition to compensatory

damages, punitive damages are warranted on either or both of those claims as punishment

to Reynolds and as a deterrent to others.

The trial of the punitive damages issue is divided into two parts.  In the first part, you

will decide whether Reynolds's conduct is such that punitive damages are warranted.  If you

decide that punitive damages are warranted under the law, we will proceed after you return

your verdict in this first part of the trial, to the second part of that issue during which the

parties may present additional evidence and argument on the issue of punitive damages.  I

will then give you additional instructions, after which you will decide whether, in your

discretion, punitive damages will be assessed and, if so, the amount.

Punitive damages are warranted if you find that Mrs. Aycock has proved by clear and

convincing evidence that Reynolds had actual knowledge of the wrongfulness of its conduct

and that there was a high probability of injury or damage to Richard Aycock and, despite that

knowledge, intentionally pursued that course of conduct, resulting in Mr. Aycock's death.

"Clear and convincing evidence" differs from a "preponderance of the evidence."  As

I have already instructed you, "preponderance of the evidence" means an amount of evidence

that is enough to persuade you that a claim or contention is more likely true than not true.

In contrast, "clear and convincing evidence" is evidence that is more compelling and

persuasive.  It is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction without hesitation about the matter in issue.

If you find for Mrs. Aycock and against Reynolds, and you also find that clear and convincing evidence shows that Reynolds's conduct was a substantial cause of Richard Aycock's death that such conduct warrants punitive damages under the standards I have given you, then in your discretion you may determine punitive damages are warranted against Reynolds.

So Question 11 on your verdict form is:

11.    If you answered "Yes" to Question 6 or 8, do you find by clear and convincing evidence that punitive damages are warranted against Reynolds under the circumstances of this case?

YES _____          NO _____

## INSTRUCTION NO. 17.

Of course, the fact that I have given you instructions concerning the issue of Mrs. Aycock's damages should not be interpreted in any way as an indication that I believe that Mrs. Aycock should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only afer full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember that in a very real way you are judges–judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**INSTRUCTION NO. 18.**

When you go to the jury room, you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared here:

**[EXPLAIN VERDICT FORM]**

You will take the verdict form to the jury room and when you have reached unanimous agreement, you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the courtroom security officer who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at any time.